IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MELKY TERRY,

                 Petitioner,

        v.

ALAN UCHTMAN,

                 Respondent.

Case No. 06 C 1093

Hon. Harry D. Leinenweber

### MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner's Melky Terry's ("Terry"), 28 U.S.C. § 2254 petition. For the reasons stated herein, his petition is denied. The Court also notes that Terry is incarcerated at the Menard Correctional Center, where Michael Atchison replaced Respondent Alan Uchtman as the Warden. Accordingly, Michael Atchison is substituted as the Respondent. *See* Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts; *Rumsfeld v. Padilla*, 542 U.S. 426, 436 (2004).

### I. BACKGROUND

This case arises from the 1985 deaths of 16-year-old Grace Marcatante ("Grace") and her 11-year-old brother John, both of whom suffered extensive head injuries after being struck repeatedly with a baseball bat. Terry was charged in state court by indictment in 1985. In 1987, a jury in the Circuit Court of Cook County found

him guilty of first degree murder in connection with John's death and voluntary manslaughter in connection with Grace's death. Terry was sentenced to life in prison on the first degree murder conviction and a concurrent thirty year extended term sentence on the voluntary manslaughter conviction.

Terry unsuccessfully pursued a direct appeal and a variety of state collateral remedies. In addition, he began his efforts to obtain federal *habeas corpus* relief in December 1992, but his § 2254 petition was not fully briefed until almost twenty years later on November 14, 2012, in a second federal *habeas corpus* case filed in 2006. The procedural history is thus labyrinthine. It is also relevant in light of Respondent's allegations that Terry's present petition is time-barred. Because of this, the Court will begin by summarizing the underlying facts and Terry's state and federal proceedings.

The Court presumes that the state court's factual determinations are correct for the purposes of *habeas* review as Terry neither contests them nor points to clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002).

## A. The Murders and Terry's Arrest

At approximately 3:30 p.m. on November 25, 1985, police responded to a call made by eighteen-year-old Rosemary Marcatante, who reported that a burglary was in progress at her home in

Hillside, Illinois.  Upon arrival, the police found the bodies of Rosemary's siblings, sixteen-year-old Grace Marcatante and eleven-year-old John Marcatante, who suffered fatal head injuries.

A neighbor, Edna Kornack, told police that she saw Grace arrive home from school at 3:00 p.m. and then saw a tall, thin man wearing a gray hoodie run south on Bellwood Avenue in the same direction Grace had been walking.  Shortly after that, she saw the same man run the opposite direction carrying something in his hand. (Dkt. 77, Ex. GG at 1311-19.)

The victims' mother, who arrived at the home shortly before officers, told the officers that Grace had a tall, slender boyfriend named Melky Terry who had previously threatened Grace. She also told the officers that she had seen Terry wear a gray hooded jacket within the past week and provided his address.

Two Bellwood police officers traveled to Terry's house.  While en route, they saw Terry running on the street wearing a shower cap and a blue sweatshirt under a gray jacket topped off by a black jacket.  A third officer was parked near Terry's house.  He recognized Terry and yelled for him to stop.  Terry continued to run toward his home.  Subsequently, the officer knocked on the door of Terry's house and spoke to his father, who eventually brought Terry outside.  Police then arrested Terry and took him to the police station.

## B.  Terry's Statements

Terry does not contest that he was read his *Miranda* rights at the police station.  He signed a waiver of rights form and was questioned by a police sergeant and an assistant state's attorney.

Terry told the police that he was out walking when he saw Grace walking home from school.  He stated that he followed her and they argued.  They went inside the Marcatante home, and according to Terry, Grace started screaming at him and hit him in the face. Terry explained to officers that after she hit him, he picked up an aluminum baseball bat that was in the home and hit Grace in the head.  He also claimed that Grace's brother John came toward him in response to his sister's cries for help, and as John approached, Terry hit him in the head with the bat.  Terry also told police that after he left the Marcatante home, he threw the bat onto a factory roof.  He showed officers the bat's location on the map, and shortly thereafter, officers recovered the bat from the location identified by Terry.

Terry then agreed to give a statement transcribed by a court reporter.  The statement tracked the prior statement, except that Terry said that John jumped on his back in response to Grace's cries for help.  Terry could not recall how many times he hit Grace or John with the bat.

## C.  **Terry's Trial and Direct Appeal**

Prior to trial, Terry filed motions to quash his arrest for lack of probable cause and to suppress the statements he made following his arrest.  The trial court denied these motions.

Ultimately, after a full trial, the jury found Terry guilty of first degree murder and voluntary manslaughter.  He was sentenced to life imprisonment for murder and thirty years of imprisonment for voluntary manslaughter.  *People v. Terry*, No. 1-87-1226 (Ill. App. Ct. Oct. 25, 1990) (unpublished order, direct appeal) (Dkt. 74 at Ex. D).  Terry appealed, and the Illinois Appellate Court affirmed both his convictions and his sentence.  *Id*.  Terry then filed a petition for leave to appeal with the Illinois Supreme Court arguing that:

> (1)  The jury instructions for murder and voluntary manslaughter were unconstitutionally confusing since the jury sent out five notes asking for clarification over the course of two days of deliberations and ultimately returned inconsistent verdicts of voluntary manslaughter and murder.
>
> (2)  The trial court incorrectly responded to a question from the jury by advising them that the provocation necessary for a finding of voluntary manslaughter had to come from each victim individually.
>
> (3)  The trial court improperly excluded the letter from Rosemary discussing her hatred of Grace.
>
> (4)  At sentencing, the trial court's consideration of the deaths of the victims in aggravation was improper as this factor was inherent in the offenses of involuntary manslaughter and murder.
>
> (5)  The trial court's finding that Terry's behavior was "exceptionally brutal and heinous" was erroneous

> since he was provoked by at least one of the
> victims and his behavior was not "premeditated,
> prolonged or tortuous."

(Dkt. 74 at Ex. E) (Terry's Petition for Leave to Appeal on direct appeal).

On February 6, 1991, the Illinois Supreme Court denied leave to appeal. *People v. Terry*, 567 N.E.2d 340 (Ill. 1991) (unpublished order) (Dkt. 74 at Ex. F). Terry did not file a petition for a Writ of *Certiorari* to the United States Supreme Court. *See* Dkt. 8 at 3.

### D. Terry's First State Postconviction Petition

In October 1993, Terry filed a *pro se* petition under Illinois's Postconviction Hearing Act, 725 ILCS § 5/122-1, *et seq.*, alleging that his trial counsel was ineffective because he failed to call Grace and John's neighbor to testify at the suppression hearing regarding the neighbor's description of the man she saw on the day of the murders or introduce "911 tapes" (presumably, two messages broadcast by the Hillside police shortly after the murders) that would have corroborated the neighbor's description. (Dkt. 74 at Ex. G) (Terry's state postconviction petition). Terry also repeated his ineffective assistance argument from his direct appeal, and argued that his postconviction counsel failed to provide assistance with the postconviction petition as is required by Illinois Supreme Court Rule 651(c). He also asserted that his thirty-year extended term of imprisonment for voluntary

manslaughter was void because Illinois law does not allow the trial court to impose an extended term sentence for voluntary manslaughter when the defendant is also sentenced to natural life for murder. (Dkt. 74 at Ex. H.)

The trial court appointed counsel to represent Terry but ultimately rejected the petition as untimely and declined to address the sentencing claim. The Illinois Appellate Court affirmed. *People v. Terry*, 1-95-3594 (Ill. App. Ct. Sept. 8, 1997) (unpublished order) (Dkt. 74 at Ex. K). Terry then filed a petition for leave to appeal to the Illinois Supreme Court raising the sentencing claim. (Dkt. 75 at Ex. L.) The Illinois Supreme Court accepted his petition, but affirmed on June 18, 1998, and denied rehearing on October 5, 1998. *People v. Terry*, 700 N.E.2d 992 (Ill. 1998) (Dkt. 75 at Ex. O).

### E. Terry's Second State Postconviction Petition

Terry's state postconviction filings become muddled at this point. He filed a successive *pro se* postconviction petition in 1999 asserting actual innocence based on his views of testimony presented at trial, the lack of blood or fingerprint evidence tying him to the crime scene, and the lack of blood on his clothing. (Dkt. 95 at Ex. P) (second state postconviction petition). For statute of limitations purposes, the district judge originally assigned to this case used the filing date of September 2, 1999, provided by the Illinois Appellate Court. *Terry v. Hulick*, No. 92

- 7 -

C 8215, Dkt. 71 at PageID# 88 (N.D. Ill. Oct. 19, 2006) (unpublished order) (Manning, J.). However, the Seventh Circuit determined that Terry filed his second state postconviction petition on July 11, 1999. *Terry v. Gaetz*, 339 F.Appx. 646, 648 (7th Cir. 2009) ("[T]he record shows that Terry actually filed his [second postconviction] petition on July 11, 1999."). As a result, this Court will use the date approved by the Seventh Circuit.

The state trial court summarily dismissed the second postconviction petition on January 7, 2000. *People v. Terry*, No. 1-00-3971, at 2 (Ill. App. Ct. May 24, 2002) (unpublished order) (Dkt. 75 at Ex. T). Terry appealed, arguing that: (1) under Illinois law, the trial court was required to appoint counsel to represent him because his postconviction petition had been pending for more than ninety days; (2) a provision of Illinois's Postconviction Hearing Act violated the "single subject rule" of the Illinois Constitution; and (3) his sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (Dkt. 75 at Ex. Q.)

The Illinois Appellate Court agreed with Terry's first argument, vacated the judgment of dismissal, and remanded the case. *People v. Terry*, No. 1-00-3971 (Ill. App. Ct. May 24, 2002) (unpublished order) (Dkt. 75 at Ex. T). On remand, appointed counsel amended the petition to add an *Apprendi* challenge to Terry's sentence, Dkt. 79 at Ex. QQ, at C27-32 (supplemental petition for post conviction relief and supporting affidavit of

- 8 -

counsel).   The trial court dismissed the amended petition as untimely and successive, stating:

> [T]he Defendant was convicted in '87.  His conviction was affirmed in '90, and [leave to appeal] was denied in '91. Under the statute of limitations applying to [postconviction petitions], the [petition] should have been filed within six months of that time.  And it was filed actually eight years late.  And in addition, it's a successive petition.  And any issue which is raised here would have been waived because it should have been raised in the first petition.

(Dkt. 75 at Ex. U at A3) (transcript of proceedings before the trial court).

Terry again appealed, but only argued that his sentence violated *Apprendi*.  *Id.*  However, the Illinois Appellate Court again affirmed.  *People v. Terry*, No. 1-04-2096 (Ill. App. Ct. Sept. 8, 2005) (unpublished order) (Dkt. 75 at Ex. X at 3).  Next, Terry filed a petition for leave to appeal to the Illinois Supreme Court reiterating his *Apprendi* claim.  (Dkt. 75 at Ex. Y.)  The Illinois Supreme Court denied leave to appeal on December 1, 2005, *id*. at Ex. Z.

### F.   Federal *Habeas* Proceedings

Terry filed his first federal *habeas* petition in 1992.  *Terry v. Hulick*, 92 C 8215.   That petition was dismissed without prejudice in June of 1995 based on Terry's failure to exhaust his state court remedies.  *See Terry v. Hulick*, 92 C 8215, Dkt. 55; *Terry v. Gaetz*, 339 F.Appx. 646, 647-48 (7th Cir. 2009).   On March 1, 2006, the clerk docketed another *pro se* § 2254 petition

from Terry dated February 28, 2006. *Terry v. Uchtman*, No. 06 C 1093, Dkt. 1; *Terry v. Gaetz*, 339 F.Appx. at 647. "The district court [originally presiding over this case], worried about statute-of-limitations problems due to the intervening passage of AEDPA, decided to circumvent any potential problems with Terry's second *habeas* petition by converting its 1995 dismissal of Terry's first *habeas* petition into a stay. It drew support for this course of action from our intervening decision in *Newell v. Hanks*, 283 F.3d 827 (7th Cir. 2002), in which we held that a district court may stay, rather than dismiss, a federal *habeas* petition while the petitioner exhausts his state remedies. The district court then construed Terry's second *habeas* petition as an amended petition and reopened his case under the first [1992] docket number." *Terry v. Gaetz*, 339 F.Appx. at 647-48.

Shortly thereafter, the district judge ordered additional briefing based on recent Seventh Circuit precedent. *Terry v. Uchtman*, No. 06 C 1093, Dkt. 23. It then held that the 2006 petition was time-barred, *Terry v. Hulick*, 92 C 8215, Dkt. 71, and denied a group of motions to reconsider after a series of administrative problems regarding the receipt of Terry's filings and the docketing of orders addressing those filings. *Id.* at Dkt. 77.

On appeal, the Seventh Circuit granted a certificate of appealability, appointed counsel, and ultimately held that the 2006

- 10 -

petition was governed by AEDPA's one-year grace period, which was tolled "during the pendency of a properly filed petition for state postconviction relief." *Terry v. Gaetz*, 339 F.Appx. at 648 (citing 28 U.S.C. § 2444(d)(2)). The Seventh Circuit treated both of Terry's state postconviction petitions as tolling the limitations period but did not address whether those petitions were "properly filed" under 28 U.S.C. § 2244(d)(2). *Id*. at 648-50 & n.3.

Instead, the Seventh Circuit acknowledged that the state court had "dismissed [the first] petition as untimely." It nevertheless found that the Respondent's failure to contend that the petition was not "properly filed" at the district court level resulted in a waiver of that point. *Id*. at 649 at n.3.

Similarly, the Seventh Circuit treated Terry's first state postconviction petition as "pending" in state court through the date the Illinois Supreme Court denied the corresponding petition for rehearing (October 5, 1998), rather than the date that the appellate court affirmed the judgment in Terry's case (June 18, 1998). Four days before oral argument, Respondent filed a letter suggesting that June 18, 1998, was the proper date. The Seventh Circuit acknowledged that if the petition was no longer pending as of June 18, 1998, the 2006 § 2254 petition would be time-barred. However, it held that Respondent had waived its ability to rely on the June 18 date as it neither raised that argument before the district court nor included it in his appellate brief. *Id*. at 649.

On remand to the district court initially assigned to Terry's case, the court appointed counsel through the Federal Defender Program. Counsel discovered that necessary portions of the transcripts from Terry's state court trial were missing, located the transcripts, and had them transcribed. In 2012, Terry filed an amended petition, Dkt. 64, containing five claims:

1. The jury instructions on voluntary manslaughter misstated Illinois law under *People v. Reddick*, 526 N.E.2d 141 (Ill. 1988), as they required the State to prove that Terry acted under a sudden and intense passion caused by John even though the State's theory was that John did not provoke Terry. In addition, the trial court violated Terry's constitutional rights by improperly answering questions asked by the jury. Finally, "[t]he State's actions at trial and in arguing that certain answers be given to jury questions mandated that the jury could not find [Terry] guilty of the voluntary manslaughter of John even though the trial Judge determined that such a verdict would be appropriate for the jury to consider." Dkt. 64 at PageID# 224. (Claim I)

2. Answers to questions posed by jury "highlighted the flawed jury instructions" by improperly precluding the jury from finding voluntary manslaughter as to John because John did not provoke Terry. *Id*. at PageID# 224-35. (Claim II)

3. Terry's sentence for voluntary manslaughter was "void" and "improperly imposed under the relevant [Illinois] statutes." *Id*. at PageID# 227. (Claim III)

4. Terry's trial counsel was ineffective (Claim IV) because he failed to:

   (a) "interview any of the identified witnesses in this case," *id*. at PageID# 227.

(b) interview Mary Hamblin, whom Terry contends would have stated that she saw Grace, John, and a tall man who was not Terry wearing "a dark jacket and something on his head" walking toward the Marcatante home on the afternoon of the murders, *id*. at PageID#227.

(c) impeach Officer Wendt's suppression hearing and trial testimony by:

(I) calling Edna Kornack to testify that she never told police that the man she saw running from the direction of the Marcatante house was African-American; and

(ii) subpoena and introduce "police radio tapes," which according to Terry would have corroborated Kornack and impeached Wendt on that point, *id*. at PageID#228.

5. The cumulative effect of the constitutional violations in Terry's first four claims violated his right to a fair trial and sentencing (Claim V).

## II. <u>LEGAL STANDARD</u>

A *habeas* petitioner is not entitled to a writ of *habeas corpus* under 28 U.S.C. § 2254 unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a

relevant Supreme Court precedent and arrives at a result opposite to ours." *See Williams*, 529 U.S. at 405.

With respect to the "unreasonable application" prong of § 2254(d)(1), a *habeas* petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id*. at 407. A state court's application of Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable. *Harrington v. Richter*, — U.S. —, 131 S.Ct. 770, 786 (2011) ("even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable").

### III.  ANALYSIS

#### A.  Terry's § 2254 Petition & Statute of Limitations

Under 28 U.S.C. § 2244(d)(2), the one-year statute of limitations applicable to § 2254 petitions is tolled when "a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). Respondent reasserts his argument that both of Terry's state postconviction petitions were untimely. He reasons that because these petitions were not "properly filed" they could not have tolled the statute of limitations. Respondent acknowledges that the Seventh Circuit found that he had waived this argument and that the finding of waiver is controlling as it is the law of the case. Nevertheless, he asserts that the Seventh Circuit's finding of

waiver applies only to Terry's 2006 *pro se* § 2254 petition. According to Respondent, the filing of an amended petition through counsel in 2012 opened the door for him to re-raise his previously rejected statute of limitations defense in response to the 2012 petition.

"An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). However, "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Id*. at 664. The Respondent concedes that Terry's claims in his amended petition are tied to the core of operative facts raised in the 1996 petition. (Dkt. 72 at PageID# 252-53.) He also acknowledges that he has been unable to find any authority "addressing whether the mandate rule extends to waiver-based timeliness rulings in cases where the waiver is no longer effective due to the filing of an amended pleading on remand." *Id*. at 13, n.8.

This Court declines to excuse the Respondent's waiver. The Seventh Circuit clearly contemplated that upon remand this Court would address Terry's claims on the merits. *Terry v. Gaetz*, 339 F.Appx. at 650 ("Terry has not waived the merits of his constitutional arguments, and the district court should proceed to

address them on remand."). This Court does not believe that the filing of an amended petition that relates back to the original petition somehow resurrects the Respondent's waived statute of limitations defense. Moreover, acceptance of the Respondent's argument would penalize Terry for the Court's decision to appoint counsel upon remand. Accordingly, the Court turns to the merits of Terry's claims.

### B. Terry's § 2254 Petition: Claims I and II

Terry's first and second claims center around information provided to the jury relating to the viability of rendering a verdict of voluntary manslaughter (instead of first degree murder) as to John. Terry first contends that the jury instructions on voluntary manslaughter misstated Illinois law under *People v. Reddick*, 526 N.E.2d 141 (Ill. 1988), as they required the State to prove that Terry acted under a sudden and intense passion caused by John even though the State's theory was that John did not provoke Terry. Terry also appears to be arguing that the trial court violated his constitutional rights by improperly answering questions asked by the jury. Next, Terry asserts that the State acted improperly as it requested that certain answers be given to jury questions in a way that prevented the jury from finding Terry guilty of John's voluntary manslaughter. Finally, he argues that the answers to the jury's questions "highlighted the flawed jury

instructions" by preventing the jury from finding voluntary manslaughter as to John given that John did not provoke Terry.

### 1. *People v. Reddick (Claim I)*

In *People v. Reddick*, 526 N.E.2d 141 (Ill. 1988), the Illinois Supreme Court held that certain instructions about the State's burden of proof when a defendant relied on provocation to support a verdict of voluntary manslaughter were erroneous. Terry contends that he is entitled to relief under *Reddick* and that "[t]he failure of the State courts to grant relief in [his] case while granting relief in other similar cases involving the same flawed instructions was violative of [his] constitutional rights." (Dkt. 64 at PageID# 224.) He also argues that the trial court's answers to jury questions "highlighted the flawed jury instructions" by preventing the jury from finding voluntary manslaughter as to John given that John did not provoke Terry.

Unfortunately for Terry, the Seventh Circuit has found that a § 2254 claim based on *Reddick* is based on Illinois criminal law and thus "is without a federal constitutional basis" and "is not cognizable on habeas review." *Verdin v. O'Leary*, 972 F.2d 1467, 1476 (7th Cir. 1992) (the invocation of *Reddick* to the state courts does not fairly present a federal due process claim); *see also Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995) *(quoting Gilmore v. Taylor*, 508 U.S. 333, 340 (1993)) (a claim that an instruction misstates Illinois law based on *Reddick* is "some

distance from arguments based on the Constitution, because . . . we have held that instructions that contain errors of state law may not form the basis for federal habeas relief."). Accordingly, Terry's *Reddick* claim is not cognizable for purposes of federal *habeas* review. Similarly, his claim that answers to questions from the jury "highlighted" the *Reddick* error is not cognizable.

These conclusions are not altered by Terry's bald contention that the allegedly erroneous instruction followed by the series of jury questions and answers violated his right to due process under the United States Constitution. On direct appeal, the Illinois Appellate Court held that the *Reddick* error was harmless because Terry was not entitled to an instruction on voluntary manslaughter as to John as it did "not believe that the act of 11-year-old John Marcatante in jumping on the defendant's back was enough to excite an intense passion in a reasonable person" and "the defendant, given his greater size and the fact that he was armed with a deadly weapon, attacked John Marcatante with violence all out of proportion to the slight provocation." *People v. Terry*, No. 1-87-1226 at 10 (Dkt. 74 at Ex. D). The Illinois Appellate Court also held that the trial court correctly advised the jury that the provocation necessary to find involuntary manslaughter as to John needed to come from John himself (as opposed to Grace). *Id*. at 15.

The Court may reexamine a state court's determination of a state law question if it rises to the level of a violation of due

process.  *See generally Middleton v. McNeil*, 124 S.Ct. 1830, 1832 (2004).  However, this Court may only consider a due process argument if it was properly presented to the state courts.  Since Terry did not couch his jury instruction argument in constitutional terms during the state court proceedings, he has procedurally defaulted it.  *Lieberman v. Thomas*, 505 F.3d 665, 670 (7th Cir. 2007) (to avoid procedural default, a petitioner must "alert[] the state court to the federal nature of his claim in a manner sufficient to allow that court to address the issue on a federal basis").

Nevertheless, the Court may still reach the merits of a procedurally defaulted claim if Terry can establish cause for his failure to follow a rule of state procedure and actual prejudice, or that the default will result in a fundamental miscarriage of justice.  *See, e.g., Edwards v. Carpenter*, 529 U.S. 446, 452 (2000).  To demonstrate cause, Terry must show that he was impeded by "some objective factor external to the defense" such as governmental interference or the reasonable unavailability of the factual basis for the claim.  *Cawley v. Detella*, 71 F.3d 691, 696 (7th Cir. 1995).  No evidence in the record shows that Terry can meet this standard.  Because Terry cannot establish cause, the Court need not reach the prejudice prong.

The fundamental miscarriage of justice exception to procedural default also does not help Terry.  To establish a fundamental

miscarriage of justice, Terry must present new and convincing evidence of his innocence by showing that it is more likely than not that no reasonable jury would convict him in light of the new evidence. *U.S. ex rel Bell v. Pierson*, 267 F.3d 544, 551 (7th Cir. 2001). Terry's petition, as well as the state court pleadings submitted to the Court, do not contain any substantiated allegations of actual innocence.

In this regard, the Court notes that Terry's second state postconviction petition contains a list of reasons why he is allegedly actually innocent. (Dkt. 95 at Ex. P.) Terry's reasons include his disagreement with the jury's view of the evidence, the lack of blood on his clothing or the baseball bat, the absence of his fingerprints at the Marcatante home, and his claim that his statements to the police were incorrect. This is not new evidence from which it is more likely than not that no reasonable juror would convict him. Accordingly, the Court need not reach the merits of Terry's procedurally defaulted claims regarding the alleged erroneous jury instruction.

Moreover, the Court notes that this procedurally defaulted claim also fails on its merits. *See Garth v. Davis*, 470 F.3d 702, 712-13 (7th Cir. 2006) (any error instructing the jury was harmless where the jury's verdict was based on a credibility determination that was amply supported by the record). As such, the Court rejects Terry's first claim.

## 2. *Answers to Questions Asked by the Jury (Claim II)*

Terry next approaches his *Reddick* argument from a different angle, arguing that the trial court violated his constitutional rights by improperly answering questions asked by the jury. This argument is essentially a recasting of the non-cognizable *Reddick* claim. Additionally, Terry fails to identify a federal constitutional right allegedly at issue with respect to this claim and fails to point to portions of the state court record to demonstrate that he presented this argument to all levels of the Illinois courts. *See O'Sullivan v. Boerckel*, 119 S.Ct. 1728, 1732 (1999); *Castille v. Peoples*, 109 S.Ct. 1056, 1059 (1989). Thus, even if this claim was cognizable, it would be procedurally barred.

Terry also asserts that the State acted improperly when it requested that certain answers be given to jury questions. According to Terry, the State's proposed answers prevented the jury from finding him guilty of John's voluntary manslaughter. Setting aside the fact that Terry's trial counsel agreed to all but one of the responses, this argument is not based on federal constitutional law and was not presented to the state courts in the guise of a federal constitutional claim. It thus is not cognizable in this federal *habeas corpus* proceeding. Accordingly, the Court finds that Terry is not entitled to relief based on any of his jury instruction claims.

## C.  The Imposition of Natural Life Plus an
## Extended Term for Voluntary Manslaughter (Claim III)

In his third claim, Terry asserts that "[t]he Illinois Supreme
Court has taken conflicting views in different cases with regard to
the propriety of the imposition of an extended term such as the
trial judge imposed in this case" and concludes that the
inconsistent holdings on this issue violate his right to due
process and equal protection. (Dkt. 64, PageID# 226.)  This
argument appears to be directed at the Illinois Supreme Court's
opinion in Terry's first state postconviction proceeding, *People v.
Terry*, 700 N.E.2d 992 (Ill. 1998) (Dkt. 75 at Ex. O).  At the
Illinois Supreme Court, Terry argued that Illinois' criminal
statutes only authorize the imposition of an extended term sentence
for the most serious of a defendant's offenses.  Thus, his 30-year
sentence for voluntary manslaughter was improper since he was also
sentenced to natural life for murder.  The Illinois Supreme Court
rejected this argument and held that an extended term sentence was
improper if a defendant received a sentence of a term of years for
murder, but permissible if he received a sentence of life
imprisonment or death.  *Id.* at 995-96.  Terry's argument now is
that the state court improperly applied state law.

This claim is not cognizable as "it is not the province of a
federal habeas court to reexamine state-court determinations on
state-law questions." *Wilson v. Corcoran*, 131 S.Ct. 13, 16 (2010).
Terry attempts to circumvent this well-established rule by claiming

that the state court's ruling deprived him of his right to due process and equal protection under the United States Constitution. However, he did not couch his sentencing argument in federal constitutional terms in the state court proceedings, so any attempt to transform his state law argument into a federal constitutional claim now is procedurally defaulted. *See O'Sullivan*, 119 S.Ct. at 1732. Moreover, for the reasons discussed above, no exceptions to procedural default are applicable.

In any event, this Court cannot sit as an appellate court and review the Illinois Supreme Court's determination of Illinois law. *See Smith v. Phillips*, 102 S.Ct. 940, 948 (1982) ("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."). Accordingly, the Court rejects Terry's third claim as it is not one arising under the federal Constitution.

### D. Ineffective Assistance of Trial Counsel (Claim IV)

In his fourth claim, Terry argues that his ineffective assistance of counsel entitles him to *habeas* relief. Respondent contends that this claim is procedurally defaulted and, alternatively, fails on the merits.

#### 1. Procedural Default

Terry concedes that his ineffective assistance claims were not raised in his state postconviction proceedings but asserts that his default is excused because his state postconviction counsel was

ineffective for not challenging trial counsel's effectiveness. It is well established, however, that there is no constitutional right to counsel on collateral review, so the performance of postconviction counsel cannot act as cause to excuse a default. *Steward v. Gilmore*, 80 F.3d 1205, 1212 (7th Cir. 1996) (rejecting effort to use postconviction counsel's failure to allege trial counsel's ineffectiveness to excuse procedural default as "[i]neffective assistance of postconviction counsel is not itself a cognizable federal constitutional violation and may not serve as cause for a procedural default.").

The Court notes that Terry's concession of failing to raise his ineffective assistance claim in his state postconviction proceedings is not completely accurate. He raised an ineffective assistance claim in his first state postconviction petition, which was filed *pro se*. *See* Dkt. 74 at Ex. G. He did not, however, repeat this claim in either of his two state postconviction appellate briefs. *See* Dkt. 74 at Ex. H; Dkt. 95 at Ex. Q. The failure to present a claim to state intermediate court means that it is procedurally barred. *See Castille v. Peoples*, 489 U.S. 346, 349. The Court will thus not parse through Terry's petitions for leave to appeal as the failure to present the ineffective claim to the Illinois Appellate Court means that it is procedurally defaulted. *Id*.

### 2. *Martinez v. Ryan*

In an effort to avoid procedural default, Terry directs the Court's attention to the Supreme Court's recent decision in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). In that case, the Supreme Court carved out a narrow exception to the usual rule that ineffective assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of trial counsel. To be eligible for this exception, a petitioner must, among other things, "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id*. at 1319.

In his ineffective assistance of counsel claim, Terry contends that his trial counsel was ineffective for failing to (1) interview unspecified witnesses; (2) interview Mary Hamblin, a woman who saw a man walking toward the Marcatante house on the day in question; and (3) call Edna Kornak, the Marcatante's neighbor, at the suppression hearing.

In order to establish ineffective assistance of counsel, a defendant must show that his counsel's representation fell below an objective standard of reasonableness, and must establish that a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v.*

*Washington*, 466 U.S. 668, 687-94 (1984). If a defendant fails to satisfy one of the *Strickland* prongs, the Court's inquiry ends. *See id.* at 697; *see also Hough v. Anderson*, 272 F.3d 878, 890 (7th Cir. 2002).

The Court rejects Terry's broad assertion that his trial counsel failed to interview unspecified witnesses. The Court finds this argument conclusory and unsubstantiated and fails to meet the burden in *Strickland*. *United States v. Turcotte*, 405 F.3d 515, 537 (7th Cir. 2005). The Court also rejects Terry's argument that his trial counsel was ineffective for failing to interview Mary Hamblin. While Terry argues that Hamblin would have testified that she saw a tall thin man who was not Terry walking toward the Marcatante home on the day of the murders and that could have identified who the real killer was, Hamblin's account of the events was detailed in a police report Terry received in pretrial discovery. Given the overwhelming evidence against Terry, including his confession and the fact that the baseball bat was recovered in the exact location Terry pointed to, the Court does not find that but for his trial counsel's failure to interview Hamblin, the result would have been different. *Strickland*, 466 U.S. at 694.

Similarly, the Court rejects Terry's contention that his trial counsel was ineffective for failing to call Edna Kornack at his suppression hearing. Terry argues that Kornack's testimony would

have impeached the testifying officer by showing that Kornack did not tell the officer that the man he saw was African-American. However, at trial, Kornack testified that she saw a tall, thin man, but could not see the man's face or distinguish his race from where she was standing. Thus, the Court does not find that this testimony would have affected the suppression hearing where Terry sought to suppress statements made to officers after his arrest. *See United States v. Harris*, 394 F.3d 543, 556 (7th Cir. 2005) (the failure to impeach on "trivial and collateral matters" is not ineffective assistance). Therefore, Terry fails to satisfy his burden in establishing that his ineffective assistance of counsel claim has merit. *See Strickland*, 466 U.S. at 694; *Martinez*, 132 S.Ct. at 1319.

### E. Cumulative Error (Claim V)

Finally, Terry argues that the cumulative effect of constitutional violations in Claims I-IV deprived him of his constitutional right to a fair trial and sentencing. The only federal constitutional claim that could properly be before this Court (assuming it was not defaulted) is ineffective assistance. "[I]effective assistance of counsel is a single ground for relief no matter how many failings the lawyer may have displayed." *Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005). A single error cannot form the basis of cumulative error. *See, e.g.,*

*Christmas v. City of Chicago*, 682 F.3d 632, 643 (7th Cir. 2012).
Thus, Terry's cumulative error claim fails.

### F.  Certificate of Appealability

In order to obtain a certificate of appealability, Terry must make a "substantial showing of the denial of [a] constitutional right."  28 U.S.C. § 2253(c).  A petitioner makes a "substantial showing" if "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Resendez v. Knight*, 653 F.3d 445, 446 (7th Cir. 2011)(citation omitted).  For the reasons stated above, the Court finds that there can be no substantial showing of the denial of a constitutional right.  The Court declines to issue a certificate of appealability.

### IV.  CONCLUSION

For the reasons stated herein, the Court denies Terry's 28 U.S.C. § 2254 petition, and declines to issue a certificate of appealability.  The Court also directs the clerk to substitute Michael Atchison as Respondent in this matter.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date:March 7, 2013